UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEMAJIO JEROME ELLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-00515-JPH-TAB |
| | ) | |
| C. GARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF DEFAULT**

Plaintiff Demajio Jerome Ellis, a prisoner at Miami Correctional Facility, brings First and Eighth Amendment claims under 42 U.S.C. § 1983 against nine New Castle Correctional Facility ("New Castle") officials based on events that occurred when he was incarcerated at New Castle in 2023 and 2024. Mr. Ellis alleges that Defendants retaliated against him for filing grievances and requests for protective custody in violation of the First Amendment, were deliberately indifferent to his serious medical condition in violation of the Eighth Amendment, and deliberately failed to protect him, also in violation of the Eighth Amendment. Defendants C. Gard, Ms. Kidd, Captain Tebo, Warden Sevier, Ms. Cecil, Assistant Warden French, and Sergeant Gilbert ("Movant-Defendants") have moved for summary judgment. Dkts. 118, 135.

Case Manager Gard moves for summary judgment on both of Mr. Ellis's Eighth Amendment claims and his First Amendment retaliation claim. Dkt. 118. The remaining Movant-Defendants move for summary judgment on Mr. Ellis's Eighth Amendment deliberate indifference and First Amendment

1

retaliation claims, but do not move for summary judgment on his Eighth Amendment failure to protect claim. Dkt. 135. For the reasons below, their motions are **GRANTED**.

Defendants Brennan Ritchie and Evan Brown have been personally served by the United States Marshals Service and have not answered or otherwise appeared. Dkts. 124, 158. For the reasons set forth, Mr. Ellis's motion for clerk to enter default against defendants Brown and Ritchie, dkt. 152, is **GRANTED**, and the **clerk is directed** to enter default against them pursuant to Fed. R. Civ. P. 55(b)(1).

**I.**
**Procedural History**

Mr. Ellis filed his amended complaint on April 25, 2024. Dkt. 11. The Court screened the amended complaint and allowed First Amendment retaliation and Eighth Amendment deliberate indifference claims to proceed. Dkt. 14. The Eighth Amendment deliberate indifference claims proceeded "on the theory that [the defendants] have subjected Mr. Ellis to psychological distress by continuously housing him in cells with inmates who are a known risk to Mr. Ellis' safety." Dkt. 14 at 10. On July 12, 2024, Mr. Ellis filed a motion to reconsider the screening order, asking the Court to reconsider its dismissal of his failure to protect claims. Dkts. 18, 27. The Court granted that motion and permitted his failure to protect claims to proceed against all eight defendants. Dkt. 27.

2

While Case Manager Gard's motion for summary judgment addresses the reconsidered claim, dkt. 118, the remaining Movant-Defendants' motion does not. Dkt. 135.

Mr. Ellis has twice moved for the clerk to enter default as to defendants Brennan Ritchie and Evan Brown, dkts. 150, 152, who have been personally served by the U.S. Marshals Service. Dkt. 124. Dkt. 158. Neither Defendant has answered or otherwise appeared.

## II.
## Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates

the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

### III.
### Factual Background

Because Movant-Defendants have moved for summary judgment under Fed. R. Civ. P. 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572-73.

Movant-Defendants held the following jobs at New Castle:[1] Courtney Gard, Case Manager, dkt. 120-1 at ¶ 2; Sarah Kidd, Unit Team Manager, dkt. 137-5 at ¶ 3; Todd Thibeault, Unit Captain, dkt. 137-4 at ¶ 3; Mark Sevier, Facility Administrator, commonly referred to as Warden, dkt. 137-1 at ¶ 3; Glenda Cecil, Classification Supervisor, dkt. 137-3 at ¶ 3; Jennifer French, Assistant Facility Administrator, dkt. 137-6 at ¶ 3, commonly referred to as

---

[1] Movant-Defendants identify themselves as follows: C. Gard as Courtney Gard, *see* dkt. 120-1; Ms. Kidd as Sarah Kidd, *see* dkt. 137-5; Captain Tebo as Todd Thibeault, dkt. 137-4 at 1; Warden Sevier as Mark Sevier, *see* dkt. 137-1; Ms. Cecil as Glenda Cecil, *see* dkt. 137-3; Assistant Warden French as Jennifer French, *see* dkt. 137-6; and Sergeant Gilbert as Earl Gilbert, dkt. 137-2.

Assistant Warden, *see, e.g.*, dkt. 137-1 at ¶ 3; and Earl Gilbert, Sergeant, dkt. 137-2 at ¶ 3.

On August 21, 2023, Mr. Ellis was transferred from the Correctional Industrial Facility ("CIF") to New Castle. Dkt. 120-3 at 1. He was transferred with an inmate who had previously attempted to attack him at CIF, and Mr. Ellis's new cellmate had also attacked him at CIF. Dkt. 145-2 at ¶ 2.[2] Mr. Ellis submits that he wrote to and "directly told" Case Manager Gard, Team Manager Kidd, Captain Thibeault, Classification Supervisor Cecil, Assistant Warden French, and Warden Sevier about his histories with these two inmates and that these two inmates told others that Mr. Ellis is a snitch who should be robbed, beaten, raped, killed, and extorted. *Id.*[3]

After being placed together in a cell in August 2023, Mr. Ellis's cellmate threatened, attacked, and fought Mr. Ellis over the ensuing weeks. Dkt. 145-2 at ¶ 2; *see* dkt. 120-3 at 1 (showing Mr. Ellis was in first cell at New Castle for 24 days). Both Mr. Ellis and his cellmate requested Movant-Defendants to move cells:

> While at New Castle Corr Facility Annex O-Unit upon my arrival I began to write and directly told Defendants Brown, Ritchie, Gard, Kidd, Tebo, Cecil, French, and Sevier that my cellmate Mr. Redfield

---

[2] Mr. Ellis's affidavit and designated evidence address events outside the allegations of the amended complaint. *See* dkt. 15. The Court does not address the evidence that is outside the scope of this case.

[3] Team Manager Kidd, dkt. 137-5 at ¶¶ 6, 8, Captain Thibeault, dkt. 137-4 at ¶¶ 6, 8, Classification Supervisor Cecil, dkt. 137-3 at ¶¶ 6, 8, Assistant Warden French, dkt. 137-6 at ¶¶ 6, 8, and Warden Sevier, dkt. 137-1 at ¶¶ 6, 8, attest that they were never informed that Mr. Ellis had any past or then-present problems with his new cellmate. Case Manager Gard attests that Mr. Ellis was assigned to her case load in March 2024, and before that she was not involved in Mr. Ellis's requests for grievances, protective custody or bed moves. Dkt. 120-1 at ¶ 7.

jumped me at Correctional Industrial Facility and that there was another inmate they transfered from CIF with us that tryed to jump me at CIF and they was telling other inmates that Im a snitch and to rob, beat, rape, kill and extort me and me and my cellmate began to fight and he was doing stuff, food, to my property everytime I would leave the room or sleep and he continued to threaten and attack me and my property mentally and physically for months and I and he requested bed moves meny times from the defendants.

Dkt. 145-2 at ¶ 2 (errors in original).

It is undisputed that Mr. Ellis was moved to a new cell at New Castle on September 14, 2023, dkt. 120-3 at 1, although he apparently remained with the same cellmate. Dkt. 15 at 27 (indicating that Mr. Ellis was with the cellmate until October 2023).[4] The cellmate filed a false Prison Rape Elimination Act claim against Mr. Ellis, *id.* at 28, and Mr. Ellis was taken to segregation for one night on October 23, 2023, and then to a new cell on October 24. *Id.*; dkt. 120-3 at 1.

Mr. Ellis's new cellmate also began stealing from him, tampering with his food and property, and calling him a "snitch." Dkt. 15 at 28. Mr. Ellis attests that he informed Case Manager Gard, Captain Thibeault, Team Manager Kidd, Warden Sevier, Assistant Warden French, and Classification Supervisor Cecil. *Id.*[5] It is undisputed that Mr. Ellis was moved to a new cell on November 6, 2023. Dkt 120-3 at 1.

---

[4] Mr. Ellis's amended complaint is verified and therefore part of the designated record. Dkt. 145 at 9.

[5] Movant-Defendants deny receiving these communications. Dkts. 137-1 at ¶¶ 6, 8, 137-3 at ¶¶ 6, 8, 137-4 at ¶¶ 6, 8, 137-5 at ¶¶ 6, 8, 137-6 at ¶¶ 6, 8; *see* dkt. 120-1 at ¶ 7.

In early February 2024, Mr. Ellis submitted a request for protective custody[6], alleging there to be about thirty gang members at New Castle targeting him and his property such that he feared for his life. Dkt. 137-8. It is undisputed that he was moved to protective custody housing on February 4. Dkts. 137-1 at ¶ 14, 137-9.

Mr. Ellis then waived protective custody on March 6, 2024, and was moved to a new cell that same day. Dkts. 120-3 at 1, 137-9. Mr. Ellis was assigned to Case Manager Gard's caseload in March 2024. Dkt. 120-1 at ¶ 7. Before this assignment, Case Manager Gard was not responsible for or involved in Mr. Ellis's requests for grievances, bed moves, or protective custody requests. *Id.*

In his new cell, Mr. Ellis was harassed by and fought his new cellmate. Dkt. 15 at 29. Mr. Ellis's food and legal documents went missing more than once. *Id.* During a search, officers found that Mr. Ellis's cellmate was hiding alcohol, and a non-Movant-Defendant officer told the cellmate that Mr. Ellis tipped them off. *Id.* at 29-30. As a result, the inmate spit at and attempted to stab Mr. Ellis with a knife while threatening his life. *Id.* Mr. Ellis pressed the intercom button and reported that he was in danger, and staff responded by

---

[6] The subject request for protective custody is dated February 5, 2024. Dkt. 137-8. Yet, Mr. Ellis's bed search history indicates he moved to protective custody on February 4, 2024. Dkt. 120-3 (indicating one cell from Feb. 4 to March 6, 2024); *see* dkt. 137-9 (waiver of protective custody dated March 6, 2024). Mr. Ellis argues that he was written up and placed in segregation, then forced or pressured to request protective custody, dkt. 145 at ¶ 4, but the evidence he designates—his own affidavit—lacks that detail, dkt. 145-2 at ¶ 6 ("In February 2024[,] I requested protective custody from dozens of inmate[s] on my unit[,] and I was written up on conduct").

removing him from the cell. *Id.* at 30. Mr. Ellis was brought to segregated housing on April 15, 2024, dkt. 120-3 at 1, and some of his property was lost or taken by his former cellmate in the move, dkt. 15 at 30-31. Sgt. Brown issued a conduct report against Mr. Ellis for refusing his housing assignment. Dkt. 15 at 31.

Mr. Ellis filed an emergency grievance on April 22, 2024, requesting protective custody. Dkt. 145-6 at 2. He said that he requested protective custody on April 17 after his cellmate tried to stab him on April 15, that Ms. Kidd "and others" did not follow the policy regarding protective custody, and that he had written to Defendants Kidd, Gard, Richey, French, and Sevier but "nothing had been done." *Id.* Non-defendant grievance specialist M. Rutledge rejected the grievance on the basis that this concern should be raised in a classification appeal. *Id.* at 1.

Once Mr. Ellis was in segregation, Captain Thibeault, Case Manager Gard, Team Manager Kidd, and Sergeant Gilbert refused to provide Mr. Ellis his television in his new cell, telling him that inmates who want protective custody do not receive televisions. Dkt. 15 at 31. Case Manager Gard attested that she has no authority over or responsibility for inmate television privileges. Dkt. 120-1 at ¶ 6. Instead, custody staff determine whether an inmate can have a television in a restricted housing unit after he has been conduct-clear for at least 30 days. *Id.*

Mr. Ellis reports having experienced anger, stress, anxiety, panic attacks, paranoia, post-traumatic stress disorder, low self-esteem, hopelessness,

depression, fear, nightmares, homicidal thoughts, and chest pains during these events. Dkt. 147-2 at ¶ 4. From August 21, 2023, to his April 15, 2024, transfer to segregated housing, Mr. Ellis filed three grievances, but none were related to his housing placement. Dkt. 137-10 at 5 (listing grievance topics as being related to his tablet, access to medical care, and his trust account).

Team Manager Kidd, Captain Thibeault, Warden Sevier, Classification Supervisor Cecil, Assistant Warden French, and Sergeant Gilbert each attested: "I had no individual role in selecting the plaintiff's housing, *and* I did not consider the plaintiff's minimal grievances while housed at NCCF or his one request for PC in *approving* or *assigning* him any housing assignments." Dkts. 137-1 at ¶ 16, 137-2 at ¶ 16, 137-3 at ¶ 16, 137-4 at ¶ 16, 137-5 at ¶ 16, 137-6 at ¶ 16. Case Manager Gard was involved in selecting Mr. Ellis's housing starting in March 2024. Dkt. 120-1 at ¶¶ 5, 7, 9.

The assignment of an inmate to protective custody status is a multidisciplinary team's determination. Dkt. 145-11 at 1. The team's responsibilities also include ensuring those in protective custody receive treatment for health needs. *Id.* at 2. The team generally includes a Unit Team Manager, a Case Manager, and the Assistant Warden. Dkt. 145-7 at 2. Membership changes weekly. *Id.*

Mr. Ellis's First Amendment retaliation claims are based on allegations that Movant-Defendants placed him in unsafe housing and segregated housing in retaliation for filing grievances and requests for protective custody. His Eighth Amendment deliberate indifference claims are based on allegations that

9

Movant-Defendants subjected him to psychological distress by repeatedly housing him in cells with inmates who were known risks to his safety. Last, Mr. Ellis's Eighth Amendment failure-to-protect claims are based on allegations that his cellmate attacked him.

### IV.
### Discussion

### A. First Amendment Retaliation

#### 1. Applicable Law

To succeed on a First Amendment retaliation claim, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) the plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

#### 2. Analysis

Mr. Ellis's First Amendment retaliation claims are based on allegations that Movant-Defendants placed him in unsafe housing and segregated housing in retaliation for filing grievances and requests for protective custody.

10

Movant-Defendants move for summary judgment on the merits of Mr. Ellis's First Amendment retaliation claims, arguing in part that Mr. Ellis has not designated evidence of a retaliatory motivation. Dkts. 120, 136. Movant-Defendants do not dispute that Mr. Ellis engaged in protected First Amendment activity by filing grievances and requesting protective custody. *See id.* The Court assumes, without deciding, for this claim that Movant-Defendants were personally involved in Mr. Ellis's housing assignments and that a person of ordinary firmness in Mr. Ellis's situation would be deterred from exercising his First Amendment rights. *See Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020).

The Court therefore addresses the third element. "The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643-44 (7th Cir. 2013).

"Suspicious timing alone will rarely be sufficient to create a triable issue because suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Manuel*, 966 F.3d at 680–81 (cleaned up) (standing alone, fact that inmate's cell was shaken down nine minutes after he engaged in First Amendment protected activity could not

11

create triable issue of fact as to retaliation claim because another, non-retaliatory motive existed). Similarly, "[a]llegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech." *Stagman v. Ryan*, 176 F.3d 986, 999-1000 (7th Cir. 1999).

Here, Defendants Sevier, Gilbert, Cecil, Thibeault, Kidd, and French each attested they were not motivated by Mr. Ellis's grievance or protective custody activity when making any housing decisions. Dkts. 137-1 at ¶ 16, 137-2 at ¶ 16, 137-3 at ¶ 16, 137-4 at ¶ 16, 137-5 at ¶ 16, 137-6 at ¶ 16. Case Manager Gard likewise attested that her decisions "were made in accordance with [Indiana Department of Correction] policy and were based on legitimate penological interests." Dkt. 120-1 at ¶ 9.

Mr. Ellis designates no evidence allowing a reasonable jury to find that any Movant-Defendant acted with retaliatory animus. He designates no allegations from his verified amended complaint regarding the Movant-Defendants' motivation, except that they refused to place him in a safe housing situation in retaliation for requesting protective custody and filing grievances. Dkt. 145; dkt. 15 at 31-33. His conclusory allegations are too speculative to show a retaliatory motive, and "summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019) (cleaned up). Mr. Ellis similarly has not designated

12

evidence describing any retaliatory motive by the Movant-Defendants in his affidavit, dkt. 145-2, or in his other exhibits, *see* dkts. 145-3–12. Dkt. 145.

There is therefore no designated evidence that any of the Movant-Defendants commented on Mr. Ellis's protected activity; that their refusal to change his bed assignment was in response to a grievance about one of the named defendants; that his cell was shaken down due to his grievance or request for protective custody; or any other circumstantial factor. *See Jones v. Van Lanen*, 27 F.4th 1280, 1286-87 (7th Cir. 2022) (affirming summary judgment for officer on retaliation claim where inference that one guard influenced the decision of another guard at a disciplinary hearing "veers too far into speculation to survive summary judgment."); *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018) (affirming summary judgment on retaliation claim because "[t]he only evidence Daugherty points to is vague and confusing testimony that Daughtery, at some point, named Harrington in a grievance, but there is no evidence about what the grievance said or whether Harrington even saw or knew about it."). Because no reasonable jury could conclude that Movant-Defendants were motivated by retaliatory animus in any of Mr. Ellis's cell placements at New Castle, they are entitled to summary judgment on this claim.

### B. Eighth Amendment Deliberate Indifference

#### 1. Applicable Law

"Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical

need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)). A prisoner may state an Eighth Amendment claim for psychological harm due to "particular psychological sensitivities the prisoner was known to have." *Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012); *see also Leiser v. Kloth*, 933 F.3d 696, 703 (7th Cir. 2019) ("Inmates have long had a clearly established right to be free from intentionally inflicted psychological torment and humiliation unrelated to penological interests.").

### 2. Analysis

Mr. Ellis's Eighth Amendment deliberate indifference claims are based on allegations that Movant-Defendants subjected him to psychological distress by repeatedly housing him in cells with inmates who were known risks to his safety. The Court assumes for purposes of its summary judgment analysis that Mr. Ellis's psychological issues were objectively serious. To avoid summary judgment, then, the designated evidence must allow a reasonable jury to conclude that Movant-Defendants acted with deliberate indifference—that is, that they "actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

The Movant-Defendants argue that they are entitled to summary judgment because Mr. Ellis never disclosed his condition to them, so they

14

could not have been deliberately indifferent to it. Dkt. 136 at 10–11.  In response, Mr. Ellis designates evidence that he told the Movant-Defendants about his difficulties with other inmates:

> While at New Castle Corr Facility O-Unit upon my arrival I began to write and directly told defendants Brown, Ritchie, Gard, Kidd, Tebo, Cecil, French, and Sevier that my cellmate Mr. Redfield jumped me at Correctional Industrial Facility and that there was another inmate they transferred from CIF with us that tryed to jump me a CIF and they was telling other inmates that I'm a snitch and to rob, beat, rape, kill and extort me and me and my cellmate began to fight and he was doing stuff, food, to my property everytime I would leave the room or sleep and he continued to threated and attack me and my property mentally and physically for months and I and he requested bed moves meny times from the defendants.

Dkt. 145-2 at 3-4.

That affidavit, however, does not connect Mr. Ellis's cellmate conflicts and requests for bed moves with serious psychological medical needs. *See Stewart v. Wexford Health Servs.*, 14 F.4th 757, 763 (7th Cir. 2021) ("The subjective component requires the plaintiff to demonstrate that the prison official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn that inference."). The deliberate-indifference standard requires more—to be liable, prison officials must be aware of the "substantial risk of serious harm" at issue, not merely an underlying concern. *See Jones v. Mathews*, 2 F.4th 607, 612–15 (7th Cir. 2021) (awareness of heroin withdrawal symptoms cannot support deliberate indifference to subsequent ingestion of smuggled pain medication); *Rice v. Correctional Med. Servs.*, 675 F.3d 650, 678–81 (7th Cir. 2012)

(knowledge of severe mental illness cannot support deliberate indifference to inmate's death from compulsive water drinking).

The designated evidence also does not indicate that Mr. Ellis informed the Movant-Defendants that he was suffering from a serious medical condition from or related to psychological distress. *See* dkt. 145-2 at 3-4; *Munson v. Newbold*, 46 F.4th 678, 681 (7th Cir. 2022) ("The defendant must . . . have ignored a known risk."). While Mr. Ellis indicates that he suffered anger, stress, anxiety, panic attacks, paranoia, post-traumatic stress disorder, low self-esteem, hopelessness, depression, fear, nightmares, homicidal thoughts, and chest pains, he designates no evidence that he told the Movant-Defendants about those symptoms, that they were obvious, or that the Movant-Defendants otherwise learned of them. *See* dkt. 145; *Petties*, 836 F.3d at 728.

Mr. Ellis therefore has not designated evidence allowing a reasonable jury to find in his favor on the subjective element of this deliberate indifference claim. The Movant-Defendants can be liable only if they "*actually* kn[ew] of and disregard[ed] a substantial risk of harm." *Brown v. Osmondsun*, 38 F.4th 545, 550 (7th Cir. 2022). "This is a high bar because it requires a showing of something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Id.* At most, Mr. Ellis has designated evidence that he requested bed moves many times from the Movant-Defendants because of conflicts with cellmates. Dkt. 145-2 at 3-4. But that does not speak to Mr. Ellis's psychological medical concerns and therefore cannot support the Movant-Defendants' awareness of them. *See Petties*, 836 F.3d at 728–29.

16

Without designated evidence that the Movant-Defendants knew of Mr. Ellis's serious medical needs, no reasonable jury could find that the Movant-Defendants were deliberately indifferent to those needs. Movant-Defendants' motion for summary judgment is therefore **GRANTED** on Mr. Ellis's Eighth Amendment deliberate indifference claims.

### C. Eighth Amendment Failure to Protect as to Defendant Gard

Only Defendant Gard moves for summary judgment on Mr. Ellis's failure to protect claim. Dkt. 120 at 7–9; *see* dkt. 136.

### 1. Applicable Law

Prison officials have a duty to protect inmates from violent assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). They incur liability for the breach of that duty when they were "aware of a substantial risk of serious injury to [an inmate] but nevertheless failed to take appropriate steps to protect him from a known danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (quoting *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)); *see also Santiago v. Walls*, 599 F.3d 749, 758-59 (7th Cir. 2010). To succeed on a claim for failure to protect, Mr. Ellis must show that (1) Movant-Defendants were aware of a substantial risk of serious injury to him, and (2) they acted with deliberate indifference to that risk. *See Farmer*, 511 U.S. at 834, 837; *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). An official will only be liable when he disregards that risk by failing to take reasonable measures to abate it. *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).

### 2. Analysis

Mr. Ellis claims that his first cellmate, with whom he was housed from August to October 2023, attacked him. He neither alleges nor designates evidence of any other assaults from other inmates. Case Manager Gard designates evidence that she was not responsible or involved in Mr. Ellis's requests for grievances, bed moves, or protective custody requests until March 2024. Mr. Ellis designates no evidence to contest this. "[I]ndividual liability under [42 U.S.C.] § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert*, 851 F.3d 649 at 657. Given this evidence, no reasonable jury could find that Case Manager Gard had personal involvement in Mr. Ellis's housing assignment which led to the attack. *See Hunter v. Mueske*, 73 F.4th 561, 566 (7th Cir. 2023) ("Walker . . . had no authority over cell assignments and no power to reassign inmates. Simply put, he cannot be held liable for failing to do something he had no authority to do."). Accordingly, Case Manager Gard's motion for summary judgment is **GRANTED** as to Mr. Ellis's Eighth Amendment failure to protect claim.

### V.
### Motion for Entry of Default

Sergeant Brown was personally served by the U.S. Marshals Service on May 6, 2025. Dkt. 124. Officer Ritchie was also personally served by the U.S. Marshals Service, as reflected in a restricted process receipt and return filed January 6, 2026. Dkt. 158. Neither party has answered or otherwise appeared. Accordingly, Mr. Ellis's motion for clerk's entry of default, dkt. 152, is

18

**GRANTED**. His prior motion for clerk's entry of default, dkt. 150, is denied as superseded by the latter.

**VI.**
**Motion to Reconsider Injunctive Relief**

Mr. Ellis has filed a motion styled as a "Motion to Add Warden Mr. Brian English for TRO/Injunction Reconsideration Preliminary Injunction Emergency." Dkt. 147. The Court interprets the motion to be seeking reconsideration of its May 6, 2025 Order denying several motions for injunctive relief, dkt. 112, and to be attempting to add Warden English to a potential order for injunctive relief. As the Court indicated in its May 6, 2025 Order, "[d]ue to Mr. Ellis's transfer [from New Castle] to [Miami Correctional Facility], . . . his . . . motions requesting some form of injunctive relief are **denied as moot**." *Id.* at 2 (emphasis in original). Those motions remain moot, and Mr. Ellis's motion to reconsider injunctive relief, dkt. 147, is **DENIED**.

**VI.**
**Conclusion**

Movant-Defendants' motions for summary judgment, dkts. [118], [135], are **GRANTED**. Mr. Ellis's motion to reconsider injunctive relief, dkt. [147], is **DENIED**.

Mr. Ellis's motion for clerk's entry of default as to Sergeant Brown and Officer Ritchie, dkt. [152], is **GRANTED**. His earlier motion for clerk's entry of default, dkt. [150], is **DENIED** as superseded by the latter. The **clerk is directed to enter default against defendants Brennan Ritchie and Evan Brown** pursuant to Fed. R. Civ. P. 55(a). The remaining claims are Mr. Ellis's

19

claims against these defaulted defendants, and an Eighth Amendment failure to protect claim against Defendants Kidd, Tebo, Sevier, Cecil, French, and Gilbert. The **Clerk is directed** to remove Defendant Gard from the docket.

**The Magistrate Judge is asked** to schedule a telephonic status conference to discuss further proceedings.

**SO ORDERED.**

Date: 3/23/2026

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DEMAJIO JEROME ELLIS
166596
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All electronically registered counsel